Belleville Land & Lumber Company *v.* Griffith.

Opinion delivered May 7; 1928.

*John T. Hicks,* for appellant.

*Brundidge & Neelly,* for appellee.

MEHAFFY, J.   On the 21st day of February, 1898, the Des Arc & Northern Railway Company purchased from the St. Louis, Iron Mountain & Southern Railway Company a large tract of land, including the 2,014.12 acres involved in this action, paying $2.50 per acre.   The deed from the St. Louis, Iron Mountain & Southern Railway Company contained the following reservation in the granting clause:

"Reserving, however, the right-of-way of the said railroad company 100 feet wide, where the said track of said railroad or its branches has been or may be laid over said land; also reserving all coal and mineral deposits in and upon said lands, with the right to said party of the first part, its successors and assigns, at any and all times to enter upon said lands and to mine and remove any and all coal and mineral deposits found thereon without any claim for damages on behalf of said second party, its successors or assigns."

The appellee, George C. Griffith, became the owner of said lands and held same until 1910, and in 1910 conveyed the same to the Belleville Land & Lumber Company, appellant, by warranty deed, warranting the title to said lands against all claims whatever except taxes for the year 1909.   The consideration was $45,000, $10,000 cash and $5,000 annually until the purchase price was paid.   It was afterwards discovered that some portion of the lands did not contain the amount of timber the parties thought, and a reduction in price was made by canceling one of the $5,000 notes, and at that time a new mortgage and note was made for the sum of $22,500, balance due of the purchase money at that time.

Appellee brought a suit to enjoin a party who had a contract with the lumber company to cut and remove certain timber remaining on the land, and also to foreclose the mortgage which was executed October 1, 1919, for $22,500.

The defendant filed an answer and cross-complaint, denying the indebtedness, setting up the covenant of warranty and alleging various payments of principal and interest up to and including October 1, 1919.

The appellee, who brought the suit to foreclose, had an absolute title except right-of-way for the railroad company and coal and mineral rights, which rights were reserved in the deed. And appellant says the issue to be determined from all the facts is whether Griffith is entitled to recover money as compensation for a base and spurious title warranted by him to be perfect, but which he never held and could not convey, and whether also he shall repay with interest money received by him upon a false claim of right which he never possessed.

Appellant's first contention is that a covenant of warranty in a deed for land to which the warrantor had no title is broken at the time the deed is executed, and the warrantee is entitled to relief without alleging or proving eviction.

A lengthy discussion of this proposition would be useless, for this court has held that there is no cause of action until eviction. As was said by this court in the case of *Abbott* v. *Rowan,* 33 Ark. 593: "Where anything passes to the vendee, there must be eviction or its equivalent before an action can arise on the covenant of warranty," and this rule has been consistently followed by this court since.

. Again this court has said: "Covenants of warranty of title are universally held to run with the land, and ordinarily a right of action does not arise in favor of the grantee or subsequent holder of the title until there has been an eviction under paramount title; but an exception to this rule is that where the title is in the government the covenant of warranty is deemed to be broken as soon as it is made, and the right of action is complete at that time, and the statute of limitations begins to run. * * * Judge RIDDICK, speaking for the court in *Dillahunty* v. *Railway Company, supra,* said that one of

the reasons for the exception was 'that the United States should be considered as always asserting title to their lands.' '' *Quinn* v. *Lee Wilson & Co.*, 137 Ark. 69, 207 S. W. 211. See also *Smith* v. *Boyston Land & Lbr. Co.*, 131 Ark. 22, 198 S. W. 107.

It will therefore be seen that this court is committed to the rule that, when the vendee sues for breach of warranty, where there has been an eviction, the statute of limitations applies; that no right of action accrues until there has been an eviction under paramount title. And the only distinction between this case and the cases formerly decided by this court is that the vendee did not bring a suit against the vendor for breach of warranty, but the vendor brought suit to foreclose the mortgage and the vendee interposed the defense of breach of warranty.

While the appellant could not maintain a suit for breach of warranty before eviction, it had the right, when suit was brought against it to foreclose the lien, to set up and prove that the vendor did not have an absolute title, and that it had been damaged by reason of failure of title, and it had a right to show the amount of its damages because of this failure of absolute title, and to have the purchase price reduced by that amount.

It was stated by this court in *Abbott* v. *Rowan, supra*: ''Where no title passes nor possession is taken of lands held by a stranger, there have been two lines of decision totally at variance and antagonistic to each other with regard to the rights of a covenantee under a covenant of warranty.''

The court then discusses the two lines of authority, but it is unnecessary to call attention to them here. Our court has adopted the rule herein announced.

It is next contended by the appellant that eviction is not a prerequisite to an action for breach of warranty in case of a conveyance of both surface and mineral rights by warranty deed, the vendor being without right to the minerals. This identical question was decided

against the contention of appellant in the case of *Deupree* v. *Steed, supra,* and it would be useless to discuss it further here. We hold, however, that, where the suit is brought to enforce the collection of the purchase money, the vendee may reduce the amount of the purchase price by the amount of damages because of the breach of the warranty.

It is next contended that "the measure of damages for the breach of warranty is the consideration of the land and interest from the date of the deed." The measure of damages would be the value of the mineral rights or whatever the vendor did not have the right to convey, one of the authorities quoted by appellant holding: "Where the land is subject to an incumbrance which cannot be removed, the measure of damages is the depreciation in value of the land by reason of the incumbrance."

Appellant's next contention is that payment of the purchase money is not a condition precedent to the right to recover on the warranty. We have already stated that if the purchase price had been paid, then no cause of action accrued until there was an eviction, but where the vendor sues to collect the purchase price, he may set-off his damages in that suit. And under such circumstances, of course, the payment of the purchase money is not a condition precedent. The suit is for the purchase money, and the damages may be set-off against the claim for the purchase price.

It is next contended by the appellant that an allegation of breach of warranty offered as matter of defense is not barred by the statute of limitations, and in this case the breach is pleaded solely as a defense. The appellant is correct in this contention, and his claim was not barred. * * * As stated above, we have already held that no cause of action accrued until eviction, and a suit could not be maintained for breach of warranty except in cases where suit is brought for the purchase money as in this case.

The next contention of appellant, that knowledge of the purchaser that the vendor has no title does not affect the right to recover for breach of warranty, we think is correct, and in this case it appears that neither party knew anything about the reservation in the original deed until long after the sale.

It is next contended by appellant that mineral rights retained by reservation or exception in the granting clause in a deed are held in perpetuity. This court has said: ''There has been a wealth of discussion on the subject whether or not there can be a severance of the surface and mineral rights in land so as to uphold a sale or reservation of the latter, and there is not entire harmony in the discussion, but it appears to us to be in accordance with the great weight of authority to say that there may be such separation, and that mineral rights, even those including gas, a volatile substance and generally referred to as being of a vagrant character and liable to escape, may be the subject-matter of a separate sale or reservation so as to create or reserve a right in perpetuity.'' *Bodcaw Lumber Co.* v. *Goode,* 160 Ark. 48, 254 S. W. 345.

There are numerous cases cited in the Bodcaw Lumber case, and it is the settled rule in this State that mineral rights retained by reservation or exception, as in the deed involved in this case, are held in perpetuity.

A number of witnesses were introduced and testified with reference to the value of the mineral rights reserved. The appellant offered testimony that the railroad company held the mineral rights in all of its lands at $10 per acre, and it therefore contends that that is the value of the mineral rights and that it ought to recover that amount because of the failure of appellee's title. We do not agree with appellant in this contention. The appellant sells its lands including the mineral rights at $10 an acre. The price at which the railroad company would be willing to sell would not be a criterion and not a proper measure of damages, and is very little evidence, if any at all, as to the real value of the mineral rights.

What appellant is entitled to recover for failure of title to the mineral rights in the vendor is the value of the mineral rights and not what the railroad company would be willing to sell for. If fixing the price at $10 would be the measure of damages, there is no reason why it might not fix it at $50 per acre, and there would be the same reason for contending that that was the value. Besides, the testimony offered by both appellant and appellee conclusively shows that the appellant was purchasing the land for the timber that was on it and really did not consider anything but the timber. It is true it bought the land, and, since it did, it was entitled to a conveyance of the land which included the timber and the mineral rights. The testimony shows that the appellant's agent, before the purchase was completed, went over the land himself for the sole purpose of seeing the timber and estimating it. The character and quantity of the timber alone, in the estimation of both parties, fixed the value. The mineral rights were not thought of by either party and there is no evidence in the case tending to show that the mineral rights on the land in controversy are valuable.

The chancellor allowed appellant $1 an acre. While we think this is more than the proof justified, there is no appeal from this finding, and it will therefore not be disturbed. We think the finding of the chancellor that appellant was entitled to $1 an acre for the mineral rights on the lands in controversy is certainly as much as appellant was entitled to, and the decree of the chancery court is therefore affirmed.