James DAVIS, Administrator of the Estate of Monroe Luther Davis,
Deceased *v.* Dr. Gordon R. PARHAM; Parham, Sills & Hays Clinic;
Sparks Medical Foundation; Sparks Health System; Dr. Neil E.
Crow, Jr., and Sparks Regional Medical Center

04-929 208 S.W.3d 162

Supreme Court of Arkansas
Opinion delivered May 12, 2005

*Law Offices of Charles Karr, P.A.*, by: *Charles Karr*, for appellant.

*Warner, Smith & Harris, PLC,* by: *G. Alan Wooten* and *Kathryn Stocks,* for appellees Dr. Gordon Parham, Parham, Sills & Hays Clinic, Sparks Medical Foundation, Sparks Health System, and Sparks Regional Medical Center.

*Ledbetter, Cogbill, Arnold & Harrison, L.L.P.,* by: *J. Michael Cogbill* and *Rebecca D. Hattabaugh,* for appellee Dr. Neil E. Crow, Jr.

JIM GUNTER, Justice. This case arises from an order from the Sebastian County Circuit Court dismissing a negligence claim filed by appellant, James Davis, the administrator of the estate of the decedent, Monroe Luther Davis. The trial court granted a motion to dismiss filed by appellees, Dr. Gordon R. Parham, Parham, Sills & Hays Clinic ("Clinic"), Sparks Medical Foundation, Sparks Health System, Dr. Neil E. Crow, Jr., and Sparks Regional Medical Center ("Center"). We affirm the trial court's ruling.

The following facts are alleged in appellant's complaint. On January 26, 2001, the decedent, who was a patient of Dr. Parham at the Clinic, saw Dr. Parham and complained of a productive cough, nasal congestion, and fever. Dr. Parham ordered a chest x-ray, which he read as "clear," according to an attached progress note. Dr. Parham diagnosed the decedent with bronchitis. On January 29, 2001, Dr. Crow, a radiology specialist, read the chest x-ray, and reported that there was "no acute disease" in an attached x-ray report.

On February 24, 2003, the decedent was talking to his father on the telephone. According to his complaint, he experienced tremendous, sharp pain, and had tingling in both arms, diaphoresis, and decreased pulses in the right leg. His wife called 911, and he was transported to the emergency room at the Center. A CT scan showed the presence of a Type I aortic dissection, and he underwent emergency surgery. After surgery, he was transferred to the intensive care unit where he was on mechanical ventilation. The decedent died on February 25, 2003.

According to appellant's complaint, the chest x-ray taken on January 26, 2001, showed the aortic aneurysm, but neither Dr. Parham nor Dr. Crow mentioned it to the decedent. Neither doctor ordered additional testing after the x-ray was taken.

On February 25, 2004, appellant filed a complaint against appellees, alleging that each appellant violated the standard of care

and was negligent for, among other things, the failure to read the chest x-ray correctly. On March 15, 2004, appellees Parham, the Clinic, the Foundation, and the Center filed a motion to dismiss. Dr. Crow filed an answer on March 18, 2004, and filed a motion for judgment on the pleadings on March 26, 2004. On July 26, 2004, the trial court granted Dr. Crow's motion and dismissed the John Doe defendants. On August 2, 2004, the trial court granted the remaining appellees' motion to dismiss. Appellant now brings his appeal from this order.

 From the trial court's order of dismissal, it is clear that the trial court considered appellees' motion to dismiss, appellant's response, and "all other things properly before it." As such, it is not treated as a dismissal, but instead as a summary judgment. *Williams v. Arkansas Dept. of Correction*, 362 Ark. 134, 207 S.W.2d 519 (2005). We have repeatedly held that summary judgment is appropriate when there are no genuine issues of material fact, and the moving part is entitled to judgment as a matter of law. *Id.* Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is not proper where the evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Id.*

For his sole point on appeal, appellant argues that the trial court erred in granting appellees' motion to dismiss, and challenges the constitutionality of the statute of limitations under the Medical Malpractice Act ("Act"), codified at Ark. Code Ann. § 16-114-201 *et seq.* (1987 and Supp. 2003). Specifically, appellant makes four allegations of error. First, appellant argues that the two-year statute of limitations is special legislation in violation of Amendment 14 of the Arkansas Constitution. Second, he contends that the application of the two-year statute of limitations violates the open-court provision found in Article 2, Section 13 of the Arkansas Constitution. Third, he maintains that the medical-malpractice

statute of limitations denies equal protection to appellant and the decedent. Finally, he argues that the statute of limitations deprives appellant of due process.

■ The crux of this appeal is whether appellant's cause of action is barred by the medical-malpractice statute of limitations in a wrongful-death action. Under current Arkansas law, when a person's death is caused by the negligence of another, two causes of action arise. *Meredith v. Buchman*, 101 F. Supp. 2d 764, 766 (E.D. Ark. 2000) (citing *Matthews v. Travelers Indemnity Ins. Co.*, 245 Ark. 247, 249, 432 S.W.2d 485, 487 (1968)). First, there is a cause of action for the estate under the survival statute, and, second, there is a cause of action for the statutory beneficiaries under the wrongful-death statute. *Id.*

■ The Medical Malpractice Act states that it applies to "all causes of action for medical injury accruing after April 2, 1979, and, as to such causes of action, shall supersede any inconsistent provision of law." Ark. Code Ann. § 16-114-202 (1987). We have said that the Medical Malpractice Act applies to all causes of action for medical injury arising after April 2, 1979, including wrongful-death and survival actions arising from the death of a patient. *Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005) (citing *Pastchol v. St. Paul Fire & Marine Ins. Co.*, 326 Ark. 140, 929 S.W.2d 713 (1996)).

■ Under the Medical Malpractice Act, a plaintiff must file a medical-malpractice cause of action within two years from the date of the wrongful act complained of. The statute of limitations, found at Ark. Code Ann. § 16-114-203(a) and (b) (Supp. 2003), provides in pertinent part:

> (a) Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues.

> (b) The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time. However, where the action is based upon the discovery of a foreign object in the body of the injured person which is not discovered and could not reasonably have been discovered within such two-year period, the action may be commenced within one (1) year from the date of discovery or the date the foreign object reasonably should have been discovered, whichever is earlier.

*Id.*

The wrongful-death statute of limitations, found at Ark. Code Ann. § 16-62-102(c) (Supp. 2003), provides that an action must be filed within three years from the decedent's date of death. The statute provides in pertinent part:

> (c)(1) Every action authorized by this section shall be commenced within three (3) years after the death of the person alleged to have been wrongfully killed.

*Id.*

■ At the outset, we note that our case law is replete with the holding that the Medical Malpractice Act's two-year limitations period conflicts with the three-year limitations period provided under the Wrongful Death Act, and is therefore controlling where death ensues from medical injuries. *See Looney v. Bolt*, 330 Ark. 530, 955 S.W.2d 509 (1997) (court, in a 4-3 decision where medical injury occurred on September 25, 1991, dismissed on summary judgment because complaint was filed on December 2, 1993); *Scarlett v. Rose Care, Inc.*, 328 Ark. 672, 944 S.W.2d 545 (1997) (court, in a 5-2 decision where medical injury alleged on May 10, 1993, was dismissed as barred because complaint filed on June 11, 1996); *Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997) (court, in a 4-3 decision where alleged malpractice injury occurred on April 28, 1992, dismissed suit because complaint filed on July 11, 1994); *Pastchol v. St. Paul Fire & Marine Ins.*, 326 Ark. 140, 929 S.W.2d 713 (1996) (court, in a 5-2 decision where plaintiff filed wrongful-death action alleged from a medical injury on August 26, 1991, dismissed because belated complaint filed on September 7, 1993); *Hertlein v. St. Paul Fire & Marine Ins. Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996) (court, in 4-3 decision where death ensued from February 2, 1992, medical injury, dismissed claim not filed until May 1994); *see also Ruffins v. ER Arkansas, P.A.*, 313 Ark. 175, 853 S.W.2d 877 (1993) (court, in 4-3 decision that the Medical Malpractice Act superseded the wrongful-death action in terms of notice of intent to sue).

Furthermore, we stated in *Scarlett, supra*:

> We recognized in *Ruffins* that the Medical Malpractice Act was enacted long after the wrongful death statute was enacted, and that it expressly states that it applies to all causes of action for medical injury and that it supersedes any inconsistent provision of law. We

have consistently applied this reasoning in the cases following *Ruffins*. We adhere to this position, and decline to overrule these cases.

*Scarlett*, 328 Ark. at 675, 944 S.W.2d at 547.

█ As a threshold matter, based upon this precedent, we hold that the trial court correctly ruled that appellant's cause of action is controlled by the two-year medical malpractice statute of limitations set forth in Ark. Code Ann. § 16-114-203. Here, appellant alleges in his complaint that his "cause of action did not accrue until February 25, 2003." However, based upon the foregoing precedent, the medical-malpractice statute of limitations applies. Under Ark. Code Ann. § 16-114-203(a), "all actions for medical injury shall be commenced within two (2) years after the cause of action accrues." *Id.* Under Ark. Code Ann. § 16-114-203(b), "[t]he date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time." *Id.* Based upon these two statutes, the alleged negligence occurred on January 26, 2001, when the chest x-ray, which allegedly showed an aortic aneurysm, was read by Dr. Parham as "clear." Dr. Crow's alleged negligence occurred on January 29, 2001, when he noted that there was "no acute disease." Appellant filed his complaint on February 25, 2004, which is three years past the date of the alleged misreadings of appellant's chest x-rays.

We now turn to appellant's specific arguments on appeal. First, appellant argues that the medical-malpractice statute of limitations, as applied in this wrongful-death case, is invalid as special legislation under Amendment 14 of the Arkansas Constitution. Specifically, appellant challenges the constitutionality of the two-year statute of limitations because the Act arbitrarily creates classes of healthcare providers and patients. Appellant asserts that the Act serves as special legislation by (1) creating a class of doctors who have greater protection than those doctors who are liable under the wrongful-death statute; (2) denying a wrongful-death action to statutory beneficiaries; (3) separating certain healthcare providers from other healthcare providers because their wrongful acts occur on different dates, and (4) separating patients who are unaware of the negligence during the two-year period from those who are aware of negligent acts during the two-year period.

█ Amendment 14 of the Arkansas Constitution provides that "[t]he General Assembly shall not pass any local or special act.

This amendment shall not prohibit the repeal of local or special acts." Ark. Const. Amend. 14. An act is special if, by some inherent limitation or classification, it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate, and the legislation is local if it applies to any division or subdivision of the state less than the whole. *Arkansas Health Services Comm'n v. Regional Care Facilities, Inc.*, 351 Ark. 331, 339, 93 S.W.3d 672, 676-677 (2002). Merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation. Instead, we have consistently held that an act of the General Assembly that applies to only a portion of the state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. Although a law may be limited in effect only to a few classifications, it is not necessarily special or local legislation if the classification is not arbitrary and bears a reasonable relation to the purpose of the law. *Id.*

Thus, the applicable constitutional standard of review is rational basis. Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *Eady v. Lansford*, 351 Ark. 249, 256, 92 S.W.3d 57, 61 (2002) (citing *Fayetteville Sch. Dist. v. Arkansas State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993)). Additionally, all statutes are presumed constitutional, and we resolve all doubts in favor of constitutionality. *Arkansas Tobacco Control Bd. v. Sitton*, 357 Ark. 357, 166 S.W.2d 550 (2004). The party challenging a statute's constitutionality has the burden of proving that the act is unconstitutional. *Id.* It is not our role to discover the actual basis for the legislation. *Arkansas Hosp. Ass'n v. Arkansas St. Bd. Of Pharmacy*, 297 Ark. 454, 763 S.W.2d 73 (1989); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). We merely consider whether there is any rational basis which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of arbitrary and capricious government purposes. If we determine that any rational basis exists, the statute will withstand constitutional challenge. *See Arkansas Hosp. Ass'n., supra.*

With regard to appellant's special-legislation argument, we have held that the Medical Malpractice Act in its entirety passes the rational-basis test. In *Eady, supra*, we noted that there

clearly is a rational relationship between the burden of proof required and the achievement of a legitimate governmental objective. In *Eady*, we cited the emergency clause of the Act, which states:

> It is hereby found, determined, and declared by the General Assembly that the threat of legal actions for medical injury have resulted in increased rates for malpractice insurance which in turn causes and contributes to an increase in heath care costs placing a heavy burden on those who can least afford such increases and that the threat of such actions contributes to expensive medical procedures to be performed by physicians and others which otherwise would not be considered necessary[,] and that this Act should be given effect immediately to help control the spiraling cost of health care.

*Id.* at 257, 92 S.W.3d at 61-62. We further noted that "[i]t is made clear by the General Assembly that the objective of the Act is to control rapidly increasing health care costs." *Id.*

With *Eady*, *supra*, in mind, we must determine whether the two-year statute of limitations for medical malpractice is special legislation. Here, the two-year statute of limitations is rationally related to a legitimate governmental purpose, which, as the legislature has provided, is reducing healthcare costs. As we stated in *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998), "Simply put, it is the General Assembly's prerogative to set a time in which a claim must be brought. Such a determination is a matter of public policy." *Id.* at 90, 969 S.W.2d at 617. Thus, based upon the emergency clause provided by our legislature, which indicates the legislature's concern with rising healthcare costs, we hold that the medical-malpractice statute of limitations provides a rational basis to achieve a legitimate governmental objective, and the two-year statute of limitations is not special legislation.

Second, appellant argues that the trial court's application of the two-year statute of limitations violates the open-court provision contained in Article 2, Section 13 of the Arkansas Constitution. Specifically, appellant contends that the medical-malpractice statute of limitations denies access of the courts to those plaintiffs whose claims are discovered after the two-year period has expired.

In response, appellee Parham argues that, in applying the rational-basis test to appellant's argument, medical costs would "drastically increase." Appellee Crow argues that the two-year

statute of limitations is not so unreasonably short as to deprive a plaintiff of his right to pursue a medical-malpractice cause of action.

Article 2, Section 13 of the Arkansas Constitution provides:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without delay; conformably to the laws.

Ark. Const. Art. 2, § 13.

In *Adams, supra,* we cited *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970), because the appellant in *Carter* challenged a statute of repose for actions against architects and designers, asserting that it violated Article 2, Section 13. In *Carter,* the argument was that the statute at issue gave protection to those enumerated in the statute while failing to give the same protection to others, such as materialmen and owners, whom the appellant claimed belonged in the same class as those exempted. We held that the statute was "valid, reasonable, constitutional and not enacted for arbitrary or capricious reasons." *Id.; see also Chapman v. Alexander,* 307 Ark. 87, 817 S.W.2d 425 (1991) (upholding limitations period in legal malpractice actions). In *Adams,* we held that the medical-malpractice statute of limitations had a rational basis, and that it did not deprive a claimant of a constitutional right to a redress of wrongs or a jury trial. *Id.* at 90, 969 S.W.2d at 617.

In the present case, the rational-basis test is applicable to constitutional challenges to the Act. *Simpson v. Fuller,* 281 Ark. 471, 472, 665 S.W.2d 269 (1984). Based upon *Adams,* as well as our aforementioned rational-basis analysis, we hold that the two-year statute of limitations does not violate the open-court provision, as provided by Article 2, Section 13 of the Arkansas Constitution, because it is rationally related to a legitimate governmental objective, as stated in the Act's emergency clause.

Third, appellant argues that the two-year medical-malpractice statute of limitations violates his equal-protection rights guaranteed by Article 2, Section 3 of the Arkansas Constitution. Specifically, appellant contends that, as applied in this case, the statute of limitations treats him differently because appellant and the decedent did not know they had a cause of action until after the two-year period expired.

Article 2, Section 3 of the Arkansas Constitution provides:

> The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity, nor exempted from any burden or duty, on account of race, color or previous servitude.

Ark. Const. Art. 2, § 3.

In *Raley v. Wagner*, 346 Ark. 234, 57 S.W.3d 683 (2001), we held that applying the two-year statute of limitations to minors with medical-malpractice claims, while applying the general-savings statute to minors with other tort actions, had a rational basis of controlling healthcare costs paid by the people of the state. *Id.*; *see also Eady, supra* (holding that a rational basis of keeping costs down existed for the Medical Malpractice Act's requirement that a plaintiff giving informed consent support a claim with expert testimony, and thus the Act did not violate equal protection). Additionally, in *Adams, supra*, we held that the Act did not violate the equal-protection clause because it provides different limitations periods for "typical" malpractice cases other than foreign-object cases. *Id.*

Here, in determining whether there is a rational basis for the statute, the vital question is one of reasonableness. *Gay v. Rabon*, 280 Ark. 5, 8, 652 S.W.2d 836, 838 (1983) (citing *Owen v. Wilson*, 260 Ark. 21, 537 S.W.2d 543 (1976)). It does not appear to us that, in enacting legislation with a two-year statute of limitations in medical-malpractice cases, the legislature acted in an arbitrary and capricious manner. Nor can we say that the legislature erroneously determined that medical malpractice insurance rates were increasing and placing a heavy burden of medical expense on those who could least afford it. We derive such a rational basis from the emergency clause of the Act itself. To hold otherwise would reject the legislative intent behind the Act. Therefore, we hold that the two-year statute of limitations does not violate Article 2, Section 3 of the Arkansas Constitution.

Appellant further argues that the medical-malpractice statute of limitations violates his due-process rights guaranteed by Article 2, Section 8 of the Arkansas Constitution. In *Owen, supra*, we said:

> Any statute of limitations will eventually operate to bar a remedy, and the time within which a claim should be asserted is a

matter of public policy, the determination of which lies almost exclusively in the legislative domain, and the decision of the General Assembly in that regard will not be interfered with by the courts in the absence of palpable error in the exercise of the legislative judgment.

*Id.* Based upon this reasoning, we held that the two-year statute of limitations was not unreasonably short so as to cut off claims, absent fraudulent concealment, and deprive plaintiffs of their due-process rights. *Id.*

 Based upon *Owen, supra*, we hold similarly in the present case. Appellant offers little analysis on this point, and ultimately, we are left with a rational-basis standard, which we have applied to appellant's previous arguments. Because the statute of limitations has been rationally related to a legitimate governmental objective (*i.e.*, addressing the legislature's concern of the rising costs of healthcare and imposing legislation in an effort to curb those costs), we hold that appellant's due-process rights are not violated.

As an alternative argument, appellant contends that the statute of limitations was tolled by fraudulent concealment. Specifically, appellant contends that there is a question of fact on whether the "negligence was perpetrated in such a way that concealed itself."

 When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *Adams*, 333 Ark. at 63, 969 S.W.2d 598 at 602-603. Once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden then shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.* Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *Id.* Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Id.*

 Following these discussions, we proceeded in *Adams* to address what constitutes fraudulent concealment. In order to

toll the statute of limitations, we said that the plaintiffs were required to show something more than a continuation of a prior nondisclosure. We said that there must be evidence creating a fact question related to "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Adams,* 333 Ark. at 68, 969 S.W.2d at 605 (citing *Norris v. Bakker,* 320 Ark. 629, 633, 899 S.W.2d 70, 72 (1995)).

In the present case, appellant did not meet his burden of proving by a preponderance of the evidence that the statute of limitations was tolled. *Adams, supra.* Here, after examining the assertions appellant makes in his complaint, we conclude that they all related to a failure of the physicians and clinic to inform the decedent of the aortic aneurysm, failure to diagnose, failure to read the x-ray correctly, and failure to provide follow-up care. Thus, none of the points rise to the level of a positive act of fraud. *See Martin v. Arthur,* 339 Ark. 149, 155, 3 S.W.3d 684, 687 (1999). For these reasons, appellant's alternative argument fails.

Until the General Assembly enacts legislation stating otherwise, we are bound by the holdings in our prior cases, such as *Ruffins, Hertlein,* and their progeny, that stand for the following proposition: the medical-malpractice statute of limitations governs when the medical injury results in a death. Further, we are bound to follow prior case law under the doctrine of *stare decisis,* a policy designed to lend predictability and stability to the law. *Scamardo v. Jaggers,* 356 Ark. 236, 242, 149 S.W.3d 311, 314 (2004). Based upon the foregoing conclusions, as well as the principles of *stare decisis,* we hold that the trial court was correct in granting summary judgment. Accordingly, we affirm.

Affirmed.