TECHNOLOGY PARTNERS, INC. *v.* REGIONS BANK

CA 06-648                                        245 S.W.3d 687

Court of Appeals of Arkansas
Opinion delivered December 20, 2006

*Newland & Associates, PLLC*, by: *Joel F. Hoover, Ray S. Pierce* and *Jessica A. Middleton*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *William A. Waddell, Jr.* and *Amanda Capps Rose*, for appellee.

TERRY CRABTREE, Judge. In this case from Pulaski County Circuit Court, the trial judge granted summary judgment in favor of appellee Regions Bank (Regions), ruling that the claims of

appellant, Technology Partners, Inc. (TPI), were barred by the statute of limitations. We affirm.

TPI was engaged in the business of selling computers and other office technology. Computer manufacturers often provided sales incentives to TPI in the form of rebates when a certain number or dollar amount of the manufacturers' products were sold. According to TPI's president, Tom Allen, and its vice president, Janet McGee, TPI had no system in place to keep up with the rebate checks because the rebate programs changed frequently and TPI had "no idea" what the amount of the rebates would be or when they would arrive.

In February 2001, while investigating a missing check of another type, TPI discovered that it had not received certain rebate checks to which it was entitled. After learning from the manufacturer that the checks had been sent, TPI contacted its bank, appellee Regions, to determine what had happened to the checks. Regions, for reasons of privacy, imparted little information because the person who had taken the checks was a customer of Regions; however, the bank prompted TPI to "look further." TPI sought the assistance of the Little Rock Police Department, and its investigation revealed that, between February and December 2000, TPI's sales manager and former part-owner, Wayne Newson, had intercepted numerous rebate checks worth $32,137.64, and had either cashed them or deposited them into his personal account at Regions. TPI filed affidavits of forgery, and Regions reimbursed TPI for the checks on March 30, 2001. Newson pled guilty to theft in January 2002.

According to Tom Allen, once TPI was reimbursed for the checks that Newson stole in 2000, Allen tried to obtain information from Regions regarding any other checks that Newson may have cashed or deposited. However, again for reasons of privacy, Regions declined to provide TPI with such information. As a result, in March 2002, TPI sued Newson (Pulaski County Docket No. CV02-2845) in what Allen termed an attempt to "get access to that information." Newson quickly filed bankruptcy, and the lawsuit was dismissed in June 2002. At some point thereafter, TPI obtained copies of checks and deposit slips showing that, in 1997, 1998, and 1999, Newson cashed and deposited approximately twenty-five other rebate checks at Regions in the amount of $73,668.15.

Based on this information, TPI, in June 2003, filed an amended complaint in the dismissed action, CV02-2845, attempting to add Regions and others as defendants. The trial court

dismissed the amended complaint, ruling that it had no jurisdiction because CV02-2845 had remained in a state of dismissal and had not been re-opened. However, the court stated that it would not prohibit TPI from filing a separate action against Regions.

On January 14, 2004, TPI filed the present action against Regions, seeking $73,668.15 for the checks that Newson negotiated between 1997-99 and asserting causes of action for conversion, negligence, breach of fiduciary duty, civil conspiracy, constructive fraud, and fraudulent concealment. The complaint alleged, in pertinent part, that Newson's embezzlement was ongoing from April 1998 through December 2000 and possibly began as early as 1992; that all rebate checks were made payable to TPI or one of its fictitious names; that, contrary to proper banking procedure, Regions permitted Newson to cash or deposit the embezzled checks into his personal account; that tellers who questioned Newson about the transactions received authorization to proceed from Regions officers; and that Regions never notified TPI of Newson's actions or attempted to verify Newson's authority to cash or deposit the checks. Regions responded that TPI's claims were barred by the statute of limitations.

Regions elaborated on this defense when, on January 5, 2006, it filed a motion for summary judgment. It argued that, because TPI alleged that Newson negotiated the stolen checks in the year 2000 or earlier, the 2004 complaint was filed outside the three-year statute of limitations.[1] TPI responded that the statute of limitations had not run because 1) the last embezzled check was negotiated by Newson on January 18, 2001, thus making the January 14, 2004, filing timely; 2) its conversion action did not accrue until March 2001, which was the date that Regions reimbursed TPI for some embezzled checks but not others; 3) the Arkansas saving statute applied because the complaint was filed within one year of the trial court's dismissal of the action in CV02-2845; 4) the statute of limitations was tolled by Regions's fraudulent concealment.

Regions replied that the only checks at issue in this case were negotiated between 1997 and 1999, thus making the 2001 check (for which TPI had already been reimbursed) irrelevant for statute-of-limitations purposes. It also argued that TPI could show no affirmative

---

[1] There appears to be no dispute that a three-year statute of limitations applies to the causes of action asserted by TPI. *See generally* Ark. Code Ann. § 16-56-105 (Repl. 2005).

acts of concealment sufficient to toll the statute of limitations, that TPI failed to exercise due diligence in discovering Newson's theft of the checks, and that the saving statute did not apply.

After considering the parties' pleadings and attachments, the trial court granted summary judgment in favor of Regions, ruling that: 1) the three-year statute of limitations began to run when each check was negotiated, which, with regard to the particular checks at issue in this case, was, at the latest, February 26, 1999, thereby making TPI's 2004 complaint untimely; 2) TPI showed no acts of fraudulent concealment by Regions that would toll the statute of limitations; 3) the Arkansas saving statute did not apply. TPI appeals from that order.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Davis v. Parham*, 362 Ark. 352, 208 S.W.3d 162 (2005). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is not proper where the evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Id.*

When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *Meadors v. Still*, 344 Ark. 307, 40 S.W.3d 294 (2001). However, once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.*

TPI begins by arguing that its claims for common-law conversion, breach of fiduciary duty, constructive fraud, and fraudulent concealment accrued at two different times: 1) upon the wrongful payment of each check, and 2) in February 2001 when the embezzlement was discovered and Regions failed to reimburse TPI for all of the checks stolen by Newson. TPI contends that, because this "second accrual" occurred in February 2001, its claims were not barred when the January 2004 complaint was filed.

We note at the outset that the trial court did not rule on this aspect of TPI's argument. The court determined that the statute of limitations began to run, at the latest, in 1999, when the final check at issue was negotiated. However, the court expressed no opinion as to whether a second accrual period existed, nor did it address the effect of Regions's 2001 reimbursement on the statute of limitations. In the absence of a ruling on this matter, there is nothing for this court to review. *See In re Estate of Keathley*, 367 Ark. 568, 242 S.W.3d 223 (2006).

In any event, TPI's very limited argument on this point fails to persuade. It is clear that TPI is attempting to avoid the 1999 (and earlier) accrual date of its causes of action by describing Regions's February 2001 reimbursement decision as a "second act of conversion." No convincing argument is made, nor is any authority cited, for the proposition that property, having once been completely converted, may be converted again at a later date. TPI's similar argument that Regions's 2001 "failure to reimburse the full amount" of the embezzled checks created a second accrual period on its claims for breach of fiduciary duty and fraud is likewise unsupported by convincing argument or authority. Assignments of error that are unsupported by convincing argument or authority will not be considered on appeal unless it is apparent without further research that they are well taken. *Israel v. Oskey*, 92 Ark. App. 192, 212 S.W.3d 45 (2005).

We turn next to TPI's argument that the statute of limitations was tolled by Regions's fraudulent concealment of its causes of action. A limitations period generally begins to run when the wrong occurs and not when it is discovered. *See Gibson v. Herring*, 63 Ark. App. 155, 975 S.W.2d 860 (1998). In the case at bar (and based on our discussion of the previous issue), Regions's alleged wrongful conduct occurred in 1999 or earlier, which would render TPI's January 2004 complaint untimely. However, TPI asserts that the statute of limitations was tolled because Regions, in failing to notify TPI that Newson negotiated the checks, fraudulently concealed TPI's causes of action.

When a defendant has engaged in affirmative acts of concealment, the statute of limitations begins to run at the time the cause of action is discovered or should have been discovered by reasonable diligence. *See id*. Mere ignorance on the part of the plaintiff of his rights or the mere silence of one who is under no obligation to speak will not toll the statute. *Id*. There must be some positive act of fraud, something so furtively planned and secretly

executed as to keep plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. *Id.*

TPI candidly admits that it has shown no affirmative acts of concealment by Regions. Nevertheless, it argues that fraudulent concealment occurred because Regions perpetrated acts in such a way that they concealed themselves. We disagree. Even this aspect of fraudulent concealment — an act perpetrated in such a manner as to conceal itself — requires some evidence of a cover-up, subterfuge, or design to prevent the plaintiff from learning that wrongful conduct has occurred. For example, in *Gibson, supra,* the plaintiff took a two-carat diamond to the defendant jeweler in 1992 to be mounted. In 1996, the plaintiff discovered that the ring contained a cubic zirconium rather than a diamond. He sued the jeweler in 1997, who defended on the basis of the statute of limitations. The trial court granted summary judgment to the jeweler, but we reversed, holding that a fact question remained as to whether the jeweler committed the type of fraud that concealed itself. In doing so, we observed that a cubic zirconium is designed to look like and be mistaken for a diamond.

■ By contrast, in the present case, there is no evidence that Regions's actions were designed to conceal themselves, nor is there evidence that Regions engaged in cunning or artifice to conceal its conduct. *See Courtney v. First Nat'l Bank,* 300 Ark. 498, 780 S.W.2d 536 (1989) (holding that no fraudulent concealment occurred where, even though the bank failed to follow its customer's instructions, there was no evidence that the bank took any steps to conceal that failure); *see also Hampton v. Taylor,* 318 Ark. 771, 887 S.W.2d 535 (1994) (holding that no fraudulent concealment occurred where, despite the fact that a bookkeeper made an erroneous statement, there was no evidence of an attempt to conceal it). Further, there is no evidence that Regions pointedly tried to prevent TPI from learning of its actions. *Cf. Howard v. N.W. Ark. Surgical Clinic,* 324 Ark. 375, 921 S.W.2d 596 (1996) (holding that summary judgment was improper on the issue of fraudulent concealment where there was evidence that a physician knowingly concealed the fact that a foreign object had been left in the patient during surgery). Rather, TPI has shown that, at most, between 1997 and 1999 Regions failed to disclose Newson's banking activity and, thereafter, continued the nondisclosure until 2001. Because fraudulent concealment requires more than the continuation of a prior nondisclosure, *see Davis, supra,* we find no error on this point.

TPI argues next that, because it enjoyed a special relationship with Regions, Regions's failure to disclose Newson's activities amounted to fraudulent concealment, tolling the statute of limitations. As TPI correctly notes, there are times when a failure to speak may be the equivalent of fraudulent concealment. *See Ward v. Worthen Bank & Trust Co.*, 284 Ark. 355, 681 S.W.2d 365 (1984); *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983). This occurs when there are special circumstances such as a confidential relationship in existence, so that a duty to speak arises where one party knows that another is relying on misinformation to his detriment. *See Ward, supra; Berkeley, supra; see also Camp v. First Fed. Sav. & Loan*, 12 Ark. App. 150, 671 S.W.2d 213 (1984) (holding that the question to be answered is whether there is sufficient evidence of a confidential or "other similar relationship"). However, we disagree with TPI's contention that a confidential relationship or other special circumstances were present here.

TPI asserts that the customer-bank relationship should be sufficient to establish the special circumstances necessary to create a duty by Regions to speak. However, this is contrary to established law. The relationship between a bank and its customer is generally one of debtor and creditor and not a fiduciary relationship. *See J.W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 836 S.W.2d 853 (1992); *Marsh v. Nat'l Bank of Commerce*, 37 Ark. App. 41, 822 S.W.2d 404 (1992). Something more than the mere existence of the traditional banking relationship has been required to establish special circumstances requiring disclosure. *See, e.g., Mans v. Peoples Bank*, 340 Ark. 518, 10 S.W.3d 885 (2000); *Country Corner Food & Drug v. First State Bank*, 332 Ark. 645, 966 S.W.2d 894 (1998).

TPI contends alternatively that "something more" did exist between it and Regions, over and above the traditional banking relationship. It points to the fact that it had its own account officer at Regions; that it opened a "sweep account" at Regions, where customers would send their payments to a Regions lockbox and Regions would sweep the box daily and make deposits; and that Regions provided a "private banker to the president of TPI." None of these factors take TPI's and Regions's relationship out of the ordinary realm. A business having an account officer is commonplace rather than special. As for the sweep account, its existence does not create a confidential or special relationship in any way that is relevant to this case; it is undisputed that none of the checks at issue here went through

the sweep account. *Cf. Camp, supra* (where a bank actively participated in the plaintiff's house-buying activity and therefore may have owed her a duty to disclose that the house was in a flood plain). Finally, Tom Allen testified in his deposition that Regions's officer Franklin Shirrell was Allen's banker for personal accounts and loans.

Next, TPI argues that Regions's failure to verify Newson's authority before allowing him to negotiate the checks constituted constructive fraud that tolled the statute of limitations. Constructive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others; neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. *Riley v. Hoisington*, 80 Ark. App. 346, 96 S.W.3d 743 (2003).

On this point, TPI cites *First Bank & Trust of Jonesboro v. Vaccari*, 288 Ark. 233, 703 S.W.2d 867 (1986), for its recognition that there are decisions holding that, as a matter of law, it is commercially unreasonable for a bank to accept for deposit in an individual account a check made payable to a corporation without first making an inquiry as to the authority of the depositor/endorser. TPI interprets this to mean that a bank has a duty to verify a depositor's authority and failure to do so constitutes constructive fraud. Even if *Vaccari* reflects the current state of Arkansas law,[2] and even if Regions could have been held liable in tort for failing to verify Newson's authority, the relevant question for our purposes remains whether Regions committed any act of fraud that would toll the running of the statute of limitations. We see nothing in Regions's actions evidencing a fraudulent tendency to deceive or avoid scrutiny of its conduct. *Cf. Hyde v. Quinn*, 298 Ark. 569, 769 S.W.2d 24 (1989) (holding that constructive fraud occurred where public officials failed to comply with a statutory duty to file an annual report of their expenditures, which prevented taxpayers from learning about supposedly wrongful expenditures for several years).

■ Based on the foregoing, we conclude that the trial court was correct in granting summary judgment. We recognize that the issue of fraudulent concealment is normally a question of fact that is not suited for summary judgment. *See Meadors, supra.* However, when, as in the case at bar, the evidence leaves no room for a reasonable difference

---

[2] *J. W. Reynolds Lumber Co., supra,* stated that *Vaccari* was based on prior law and was only applicable to conversion claims under the UCC.

of opinion, the issue may be resolved as a matter of law. *Id.* We therefore affirm the trial court's conclusion that the statute of limitations was not tolled by fraudulent concealment.[3]

The next matter before us is whether TPI's 2004 complaint was rendered timely by the Arkansas saving statute, Ark. Code Ann. § 16-56-126(a)(1) (Repl. 2005). That statute reads:

> If any action is commenced within the time respectively prescribed in this act, in §§ 16-116-101 – 16-116-107, in §§ 16-114-201 – 16-114-209, or in any other act, and the plaintiff therein suffers a nonsuit, or after a verdict for him or her the judgment is arrested, or after judgment for him or her the judgment is reversed on appeal or writ of error, the plaintiff may commence a new action within one (1) year after the nonsuit suffered or judgment arrested or reversed.

TPI argues that the lawsuit it filed against Newson in 2002, Pulaski County Docket No. CV02-2845, was dismissed in December 2003, and, therefore, its lawsuit against Regions, filed on January 14, 2004, was commenced within one year of the dismissal. This argument fails for several reasons, but we need only mention one. TPI's lawsuit in Docket No. CV02-2845 was originally filed against Newson only. That suit was dismissed on June 17, 2002. On June 16, 2003, TPI tried to sue Regions by simply amending the complaint in the dismissed action. According to *West v. G.D. Searle & Co.*, 317 Ark. 525, 879 S.W.2d 412 (1994), a new action was required to be filed, not simply an amended complaint adding a new defendant in the dismissed action. The 2002 dismissal therefore remained in effect for over one year, and Regions was not made a party to any valid lawsuit until January 2004. The saving statute therefore did not apply, as the trial court correctly ruled.

TPI's final argument is that fact questions remain on various matters that pertain to issues that have already been discussed herein. In light of our holding that the trial court's rulings have been proper, there is no purpose to be served in addressing these points.

The trial court's grant of summary judgment is affirmed.

GLOVER and VAUGHT, JJ., agree.

---

[3] Our ruling makes it unnecessary to examine one of the primary issues argued by the parties, which was whether TPI was diligent in learning of Newson's activities.