Beth RIDDLE, Joseph Riddle, and Julia Riddle  *v.*
Richard UDOUJ, Special Administrator of the Estate of Olivia
Udouj, Deceased, and Michael Udouj and Richard Odouj,
Trustees of the Olivia Udouj Trust

CA 06-865                                           256 S.W.3d 556

Court of Appeals of Arkansas
Opinion delivered May 9, 2007

[Rehearing denied June 20, 2007.*]

---

* GLOVER and HEFFLEY, JJ., would grant rehearing.

*Sam Sexton, III*, for appellants.

*Warner, Smith & Harris, PLC,* by: *Douglas O. Smith, Jr., Stephanie Harper Easterling,* and *Robert A. Frazier,* for appellees.

JOHN B. ROBBINS, Judge. The Sebastian County Circuit Court dismissed appellants' claims for breach of warranty and constructive fraud on the ground that they were barred by the statute of limitations. We affirm.

In 1996, appellants Julia and Joseph Riddle purchased a residential lot from appellees Michael and Richard Udouj, trustees of the Olivia Udouj Trust. A survey showed two fences on the lot, one running along and just inside the northern border and the other running along and just inside the eastern border. The deed conveyed property on both sides of the fences. Appellees warranted that they were:

> lawfully seized in fee of the aforegranted premises; that We are free from all encumbrances; that We have good right to sell and convey the same to the said Grantees as aforesaid and that We will . . . forever warrant and defend the title to said real estate against all lawful claims and demands whatsoever.

Appellants' neighbors to the north were the Knights, who had lived there for approximately fifty years, and their neighbors to the east were the Kaelins, who had lived there for approximately twenty years. In 1998, appellant Joseph Riddle cut some hedges along the fence adjacent to the Kaelins' property. The Kaelins' attorney wrote to Mr. Riddle, demanding that he not come behind the fence because "Dr. and Mrs. Kaelin tell me that the fence that divides your yards has been in place for over thirty years, and therefore in my opinion, the fence now establishes the property line between your property and Dr. Kaelin's property." Mr. Riddle apparently did not abide by this request because, in 2000, the Kaelins' attorney wrote a second letter, complaining that appellants "went into the Kaelins' yard and removed plants." The attorney again warned that the fence established the property line.

On June 18, 2001, appellants sued the Kaelins to quiet title to the strip of land between the eastern fence and the surveyed property line.[1] The Kaelins counterclaimed, and the Knights

---

[1] By that time, Joseph and Julia Riddle had sold their lot to their daughter, appellant Beth Riddle, who was also named as a plaintiff in the action. However, Joseph and Julia continued to live on the premises.

intervened, both asserting that the fence lines had become boundaries by acquiescence. The issues were thus joined, and, following a trial, Judge Harry Foltz issued an order on October 15, 2002, finding that the fence lines had been recognized for many years as the boundaries by acquiescence. Title to the disputed strips was quieted in the Kaelins and the Knights. Appellants appealed to this court, where Judge Foltz's order was affirmed in an unpublished opinion. *Riddle v. Kaelin*, CA03-167 (Ark. App. Sept. 3, 2003).

Approximately a year and a half later, on January 13, 2005, appellants sued appellees in the present action. They alleged that appellees breached the covenant of warranty because they had not been the owners of all of the property conveyed in the deed and asserted that appellee Olivia Udouj, who had signed a property disclosure form in connection with the sale, committed constructive fraud by representing that there were "no encroachments . . . adverse possession claims or similar matters that may affect title to the Property" and that there were no fences or other features "shared in common with adjoining land-owners." Appellees answered by pleading the statute of limitations as a defense, and they subsequently filed a motion for summary judgment on that ground. The trial judge agreed that appellants' causes of action were time barred and granted summary judgment. Appellants now bring this appeal.

### Breach-of-Warranty Action

All parties agree that the statute of limitations for breach of a covenant of warranty is five years. The disagreement concerns when that cause of action arose. Appellants argue that the cause of action arose when Judge Foltz entered his order on October 15, 2002, in which case their 2005 filing would be timely. Appellees contend that appellants' claim arose in 1996 when the property was sold or in 1998 when appellants received the first letter from the Kaelins' attorney, either of which would result in appellants' complaint being filed outside the statute of limitations.

Generally, the running of a statute of limitations commences when the plaintiff has a complete and present cause of action. *See Oaklawn Bank v. Alford*, 40 Ark. App. 200, 845 S.W.2d 22 (1993). An action for breach of a covenant of warranty requires that the covenant be broken and that an actual or constructive eviction occur. *See Bosnick v. Hill*, 292 Ark. 505, 731 S.W.2d 204 (1987); *Belleville Land & Timber Co. v. Griffith*, 177 Ark. 170, 6 S.W.2d 36 (1928). A grantor's covenant of seisin, which implies that he is in possession of all of the land conveyed, is broken as soon as it is

made if the grantor does not have possession, the right of possession, and complete title. *See Bosnick, supra.* The breaking of such a covenant may also result in the immediate, constructive eviction of the grantee. *See Timmons v. City of Morrilton,* 227 Ark. 421, 299 S.W.2d 647 (1957).

■ Applying these precedents, appellants' cause of action arose, as a matter of law, in 1996, when the property was conveyed to them. In that year, appellees deeded land on both sides of the fences to appellants. Yet, as Judge Foltz would later determine, those fences had for many years been recognized and consented to as the property lines.[2] That being the case, appellees conveyed land that they did not possess, have the right to possess, or have title to. This amounted to an immediate breach of the covenant. *See Timmons, supra* (holding that, when the land conveyed is at that time in possession of a stranger, the covenant is broken on the date the deed is made, and limitations commences immediately).

■ Moreover, appellees' 1996 conveyance resulted in the immediate, constructive eviction of appellants from the property on the other side of the fences. *Timmons, supra.* Constructive eviction has been defined as the inability of a land purchaser to obtain possession because of a paramount outstanding title. *Black's Law Dictionary* 576 (7th ed. 1999). On the date of the conveyance, paramount title to the property on the other side of the fences lay in the Kaelins and the Knights, as per Judge Foltz's order. Appellees, therefore, did not possess those strips of land and could not convey them. Appellants likewise could not obtain possession of those strips and were, on the date of the deed that conveyed them, constructively evicted from them. To hold otherwise would be to accord no conclusive effect to Judge Foltz's determination that the property's boundaries had long been established.[3]

Appellants cite *Turner v. Eubanks,* 26 Ark. App. 22, 759 S.W.2d 37 (1988), for the proposition that an eviction does not occur until entry of the order quieting title in another. Whatever

---

[2] Judge Foltz's finding was based in large part on the testimony of Mr. Cecil Knight, who said that a previous owner of appellants' property, Mr. Udouj, built one of the fences in 1955, which Mr. Knight and Mr. Udouj treated as the property line. *See Riddle v. Kaelin, supra.*

[3] The existence of Judge Foltz's findings, which compel the conclusion that the covenant of warranty was breached and appellants were evicted on the date of the deed, distinguish this case from *Smiley v. Thomas,* 220 Ark. 116, 246 S.W.2d 419 (1952), relied on by the dissent.

statements made by the *Turner* court to that effect were, as recognized in the opinion, a merely academic discussion and are therefore *obiter dictum*, which we need not follow. *See Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003).

Appellants further emphasize — and the dissent appears to agree with this view — that, after purchasing the land in 1996, they continued to exercise possessory rights over the land beyond the fences and thus were not evicted until the 2002 court order. But, whatever entry onto the disputed areas appellants may have exercised, it was not by virtue of their own rights or title. As Judge Foltz ruled, the boundaries between the properties had been established by acquiescence many years before; thus, at the time of conveyance, paramount title to the disputed areas lay in the Kaelins and the Knights. The fact that appellants did not incur the expense of asserting their rights in the property until long after the property had been conveyed, as they also argue, is not availing. A timely-filed action would have produced timely-incurred expenses.

The dissent also advances the idea that appellants had no reason to sue appellees prior to 2002 because, until that time, they believed that the Knights' and Kaelins' claims were illegitimate. However, the running of the statute of limitations commenced when the appellants had a complete and present cause of action. *See Oaklawn Bank, supra. Bosnick, supra*, is authority that appellants had a complete and present cause of action in 1996, when the property was conveyed to them. In *Bosnick*, the Metzlers conveyed land to the Bosnicks by a deed containing a covenant. The Bosnicks later discovered that a Mr. Hill claimed to adversely possess 2.72 acres of the land conveyed to them, which he had fenced and run cattle upon. When the Metzlers refused to take action to place the Bosnicks in possession of the 2.72 acres, the Bosnicks sued the Metzlers for breach of warranty. The supreme court recognized that Hill's possession of the 2.72 acres was a breach of the covenant of warranty, that such a breach occurs as soon as the covenant is made, and that:

> [w]hile the chancellor held Hill had not fully satisfied the time requirements to support his adverse claim, the chancellor determined that, at the time the Metzlers conveyed the property to the Bosnicks, Hill had fenced 2.7 acres of the property and had run cattle on it for at least three years prior to when this suit was commenced. The Bosnicks were compelled to bring this action to gain possession of the disputed parcel claimed by Hill. Accord-

> ingly, the Metzlers are therefore obligated to pay the costs and expenses reasonably incurred by the Bosnicks for their successful efforts in vindicating their rights under the covenant of seisin given them by the Metzlers.

*Bosnick*, 292 Ark. at 509, 731 S.W.2d at 207. Thus, the Bosnicks had a cause of action against their grantors for breach of warranty as of the date of the conveyance, even though the person who claimed to own part of the property was later determined to have had an invalid claim.

Based on the above, we conclude that the trial court was correct in ruling that appellants' claim for breach of warranty was barred by the statute of limitations. This aspect of the trial court's order is therefore affirmed.

### Constructive Fraud Action

Again, the parties agree on the applicable statute of limitations — three years in the case of fraud — but disagree as to when the cause of action arose.

A cause of action for fraud begins to run when the wrong occurs. *Hampton v. Taylor*, 318 Ark. 771, 887 S.W.2d 535 (1994); *Wilson v. Gen. Elec. Cap. Auto Lease, Inc.*, 311 Ark. 84, 841 S.W.2d 619 (1992). Once that date is established, the question then becomes whether the defendant committed some affirmative act of concealment to hide his fraud. *See, e.g., Hampton, supra; see also Tech. Partners, Inc. v. Regions Bank*, 97 Ark. App. 229, 245 S.W.3d 687 (2006); *Gibson v. Herring*, 63 Ark. App. 155, 975 S.W.2d 860 (1998). Fraudulent concealment consists of some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 935 S.W.2d 258 (1996). A continuation of the prior non-disclosure is not enough to toll the statute. *See Tech. Partners, supra.*[4]

■ In the case at bar, Olivia Udouj allegedly made a misrepresentation in the 1996 property disclosure form. Therefore, the statute of limitations expired in 1999 unless tolled by her

---

[4] We rely on these authorities rather than appellants' citation to *Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997), and *Hyde v. Quinn*, 298 Ark. 569, 769 S.W.2d 24 (1989), which are either inapplicable or do not fully state the law regarding fraudulent concealment.

fraudulent concealment. There is no evidence that Mrs. Udouj engaged in any positive acts of concealment or any furtive planning to hide her alleged misrepresentation. Therefore, the trial court was correct that appellants' 2005 complaint for fraud was untimely. Although this line of reasoning was not used by the trial court, we may affirm the trial court if it is correct for any reason. *Fritzinger v. Beene*, 80 Ark. App. 416, 97 S.W.3d 440 (2003).

Affirmed.

PITTMAN, C.J., MARSHALL, and MILLER, JJ., agree.

GLOVER and HEFFLEY, JJ., dissent.

DAVID M. GLOVER, Judge, dissenting. I agree that appellants' claim for fraud is barred by the statute of limitations, but I disagree that the same is true of appellants' breach-of-warranty action. Appellants' claim for breach of warranty did not accrue until the entry of Judge Foltz's 2002 order, meaning that their 2005 complaint was filed within the limitations period.

Appellants purchased a lot that, by all indications, extended beyond the fences in question. A survey showed the fences well within appellants' property lines, and representations on the property disclosure form indicated that no fences were shared with adjoining landowners. Approximately two years after the purchase, appellants were told by the neighbors' attorney that, in his opinion, the fence line had become the boundary line. Appellants did not accede to this opinion or give it any credence whatsoever. In fact, about two years later, they conducted other activity in the area beyond the fence. Ultimately, appellants and their neighbors found it necessary to file legal action to settle the question of where the boundary lines lay. Until the day that Judge Foltz entered his order in 2002, that question remained unsettled. How then can it be said that, prior to entry of the order, appellants were evicted from a portion of their property?

The mistake that the majority makes is in using Judge Foltz's 2002 findings to leap backward in time and effect an eviction of appellants six years earlier. While this approach may have a certain legalistic appeal, given Judge Foltz's determination that the boundary lines had been recognized for "many years," it is wholly inconsistent with what occurred in the actual passage of time before the entry of the Foltz order. During that time, appellants possessed and went upon the land beyond the fences, treated it as

their own, were not deprived of the enjoyment of it, and did not yield to what they obviously considered their neighbors' unfounded claims. Nothing equivalent to an eviction occurred until Judge Foltz informed the parties in 2002 where the boundary lines lay — a finding of fact that, I submit, could have gone either way or been overturned on appeal, in which case appellants would never have been evicted at all. Clearly, the fact of eviction did not exist until entry of Judge Foltz's order.

I also believe that the majority's reliance on *Bosnick v. Hill*, 292 Ark. 505, 731 S.W.2d 204 (1987), and *Timmons v. City of Morrilton*, 227 Ark. 421, 299 S.W.2d 647 (1957), is misplaced. In *Bosnick*, the third party asserting an interest in the grantee's land was in actual, fenced possession of a portion of the property, and the grantee was forced to file suit to *regain* possession. Here, appellants did not have to regain possession because they acquired possession, continued it, and did not relinquish it until required to do so. In *Timmons*, the grantee claimed that his grantor had constructed obstacles that prevented him from full possession of the property. The supreme court held that the grantee was constructively evicted on the date of the deed because the obstacles were "visible and obvious." By contrast, the appellants in this case had no visible and obvious means of realizing that they might not be entitled to full possession of the property conveyed to them. While the fences themselves were obvious, that they represented a boundary line was not. A boundary by acquiescence is established through silence. *See McWilliams v. Schmidt*, 76 Ark. App. 173, 61 S.W.3d 898 (2001). Who can say in the present case, without benefit of the trial court's factual finding, whether the fences were boundaries by acquiescence? This is especially true when, as stated earlier, all indications were that appellants were entitled to possession beyond the fence lines and they in fact exercised that possession.

This case is more akin to *Smiley v. Thomas*, 220 Ark. 116, 246 S.W.2d 419 (1952). There, Smiley's predecessors conveyed land to Thomas in 1929. Thomas later discovered that there was an outstanding, one-half mineral interest in the land in O'Brien Bros., Inc. In 1950, he sued O'Brien to quiet title and sued Smiley for breach of warranty. The trial court ruled that O'Brien had title to the one-half mineral interest and that Smiley was liable for breach of warranty. Smiley apparently defended on the basis of the statute of limitations, which our supreme court addressed as follows:

All of [Smiley's] defenses of the Statute of Limitations, Laches and Statute of Nonclaims against the Thomases are without merit. *There had been no constructive eviction, in effect, until the present suit was filed in December, 1950, wherein Mrs. Smiley was a party and the court held, as indicated, that O'Brien Bros. owned the ½ mineral interest* in the land involved here and that the covenant of warranty in the above deed had been breached.

*Id.* at 121, 246 S.W.2d at 421 (emphasis added). Under *Smiley*, the grantees were not evicted until suit was filed and the court held that the third party owned the disputed interest. That should be the result in this case, and, contrary to the majority's effort to distinguish *Smiley*, I do not believe that the "retroactive" application of Judge Foltz's findings should change that.

I would reverse and remand to allow appellants to pursue their claim for breach of warranty. I am authorized to state that Judge Heffley joins in this dissent.