

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CV–15–341

| | |
|---|---|
| BRUCE SMITH AND JAN SMITH, HUSBAND AND WIFE<br><br>    APPELLANTS/CROSS-APPELLEES<br><br>V.<br><br>MOUNTAIN PINE TIMBER, INC.; JOE T. BENTON III; RUSSELL A. BENTON; AND SHEILA SNOWDEN, IN HER CAPACITY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DANNY H. SNOWDEN, DECEASED<br><br>    APPELLEES/CROSS-APPELLANTS | **Opinion Delivered:** APRIL 6, 2016<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT<br>[NO. CV-2010-210-4]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

This appeal arises out of a mineral-rights dispute. Mountain Pine Timber, Inc. (MPT), sold land located in Cleburne County, Arkansas, to Bruce Smith and Jan Smith (the Smiths) and claimed to convey all rights to the land to them. However, MPT had previously conveyed the mineral rights to the land to another entity. The Smiths learned of the previous conveyance when they attempted to sell the mineral rights. Following this discovery, the Smiths sued MPT and its former shareholders for breach of warranty of title. The result was a $250.22 jury verdict in the Smiths' favor. This appeal followed.

*I. Facts*

In 1987, the Smiths purchased two tracts of land from MPT. MPT was an Arkansas corporation owned by Joe Benton, Russell Benton (the Bentons), and Danny Snowden. On February 12, 1987, the Smiths agreed to purchase 130.22 acres of land from MPT.

They paid for the land over time and eventually obtained a warranty deed to the land on April 22, 1993. On March 27, 1987, the Smiths purchased an additional 120 acres from MPT; they paid for the land immediately and were given a warranty deed to the land on that date. Neither deed contained a reservation or exception of minerals.

Prior to the execution of these warranty deeds, MPT conveyed the minerals underlying both tracts of land to CenArk Oil and Gas Company (CenArk). CenArk was also owned by the Bentons and Danny Snowden. In 2008, the Smiths contracted to sell the mineral rights to both tracts of land for $1,500 per acre. It was at this time that the Smiths discovered the prior mineral deed from MPT to CenArk. Because of the prior deed, the Smiths were unable to effectuate their sale of the mineral rights.

In October 2010, the Smiths initiated this litigation against MPT suing it for breach of warranty of title. MPT responded by filing a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(6) arguing that the statute of limitations had expired on the Smiths' claim. The circuit court denied MPT's motion to dismiss finding that the breach occurred at the time of constructive eviction and concluding that the statute of limitations did not bar this action.

During the pendency of the litigation, the Smiths learned that MPT was a dissolved corporation. Upon this discovery, they amended their complaint to add the Bentons and the Estate of Danny Snowden, the former shareholders of MPT, as parties.[1]

As the litigation progressed, the Smiths filed a motion to determine the measure of damages applicable to their claim for breach of warranty of title. The Smiths argued that

---

[1] The Bentons filed a motion to dismiss on the same statute-of-limitations grounds raised previously by MPT, and the circuit court again rejected this argument.

their damages should be based on the value of the minerals at the time of constructive eviction, while the Bentons and the Estate of Danny Snowden argued that damages should be based on the value of the minerals at the time of conveyance but limited to the purchase price. The circuit court ultimately found in favor of the Bentons and Danny Snowden's estate on this issue.

The case proceeded to a jury trial on November 6, 2014. At trial, the circuit court precluded the Smiths from presenting evidence of the value of the mineral rights at the time of constructive eviction and limited the proof to the value of the minerals at the time of conveyance. The jury returned verdicts in favor of the Smiths against all defendants, but awarded only $1 per acre in damages for a total of $250.22. A judgment reflecting the verdicts was entered on January 8, 2015. The Smiths filed a timely notice of appeal. The Bentons and the Estate of Snowden each filed a timely notice of cross–appeal.

## II. The Direct Appeal

The Smiths raise three points in this appeal: (1) that the circuit court erred in adopting a measure of damages for their breach–of–warranty–of–title claim that limited damages to the value of the mineral rights at the time of conveyance, (2) that the circuit court erred in rejecting their proffered jury instructions on damages, and (3) that the circuit court erred in excluding evidence proffered by them regarding the value of the property at the time of constructive eviction. Our primary consideration is whether the circuit court utilized the proper measure of damages for the Smiths' breach–of–warranty–of–title claim. The answer to this question is determinative of all of the issues in the Smiths' appeal.

A.  *The Proper Measure of Damages*

*Belleville Land & Lumber Co. v. Griffith*, 177 Ark. 170, 6 S.W.2d 36 (1928), outlines the general standard for the measure of damages in these types of cases.  The *Belleville* case stands for the proposition that "the measure of damages would be the value of the mineral rights or whatever the vendor did not have the right to convey."  *Id*.  As we endeavor to analyze when the mineral rights are to be valued for the purpose of assessing damages, we note that if there is a total failure of title, the damages are equal to the purchase money, with interest.  *Carvill v. Jacks*, 43 Ark. 439 (1884).  "Nothing can be allowed for improvements and the increased value of the land."  *Id*.  If a total failure of title can only result in damages equal to the amount used to purchase the land, it stands to reason that a partial breach could not result in damages greater than the purchase price.  Arkansas case law supports this theory.  Where title to only a portion of the land conveyed fails, the measure of damages "is so much of the consideration paid as is proportioned to the value of the land lost, with interest."  *Lane v. Stitt*, 143 Ark. 27, 219 S.W. 340 (1920) (citing *Alexander v. Bridgford*, 59 Ark. 195, 27 S.W. 69 (1894)).  Therefore, damages for breach of warranty of title are to be calculated based on the value of the mineral rights at the time of the conveyance.

The Smiths make an alternate argument in favor of measuring damages from the time of constructive eviction.  They assert that in cases where a grantor knows that he or she does not own the land the grantor is selling, the grantee is entitled to the value of the land at the time of eviction.  In support of this proposition, they cite *Clark v. Ziegler*, 79 Ala. 346 (1885) and *Sietsema v. Anderson*, 188 Iowa 651, 176 N.W. 611 (1920).  At best, these decisions from other jurisdictions are only persuasive authority, and we decline to adopt an

exception to the general rule limiting damages for breach of warranty of title to the value of the property at the time of conveyance.

Accordingly, we hold that the circuit court did not err in adopting a measure of damages for the Smiths' breach-of-warranty-of-title claim that limited their damages to the value of the mineral rights at the time of conveyance. With this standard in mind, we easily dispose of the Smiths' remaining points on appeal.

### B. *The Proffered Jury Instructions*

The Smiths argue that the circuit court erred in its refusal to give two jury instructions on the measure of damages. A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Williams v. First Unum Life Ins. Co.*, 358 Ark. 224, 188 S.W.3d 908 (2004). This court should reverse a circuit court's refusal to give a proferred jury instruction if there was an abuse of discretion. *S. Farm Bureau Cas. Ins. Co. v. Daggett*, 354 Ark. 112, 118 S.W.3d 525 (2003).

First, the Smiths challenge the circuit court's refusal to give an instruction providing that they were entitled to damages equal to the fair market value of the minerals at the time of constructive eviction. This instruction was refused, and the circuit court selected a damages instruction limiting the Smiths' recovery to the value of the minerals at the time of the conveyance. Following that decision, the Smiths requested that an additional instruction be read in conjunction with this damages instruction. That proferred jury instruction provided that the Smiths were allowed to recover damages based on the value of the mineral rights at the time of constructive eviction because the sellers knew that they

SLIP OPINION

did not own the minerals at the time of the conveyance. This instruction was also refused by the circuit court. As discussed previously, neither of these proffered instructions is a correct statement of our law on the measure of damages for breach of warranty of title. Accordingly, we hold the circuit court did not abuse its discretion in refusing to give these instructions.

## C. *The Proffered Evidence*

The circuit court also excluded evidence proffered by the Smiths regarding the value of the minerals at the time of constructive eviction. This court will not reverse a circuit court's ruling on the admissibility of evidence absent an abuse of discretion. *Willis v. Crumbly*, 371 Ark. 517, 268 S.W.3d 288 (2007). Again, our analysis hinges on whether the circuit court adopted the proper measure of damages in this case. Because the circuit court adopted the proper measure of damages, it was not error to refuse to admit the proffered evidence regarding the value of the minerals at the time of constructive eviction.

## III. *The Cross-Appeals*

The Bentons and the Estate of Snowden both cross-appeal. The Bentons contend that the circuit court erred by denying their motions for directed verdict because (1) there was no proof that MPT's assets were distributed to its individual shareholders during corporate liquidation, and (2) the Smiths failed to present any evidence of damages regarding the value of the mineral rights at the time of conveyance. The Estate of Snowden argues that the circuit court erred in ruling that this action was not barred by the statute of limitations.

A.  *The Bentons' Cross-Appeal*

Both of the Bentons' points on cross-appeal pertain to whether the circuit court properly denied their motions for directed verdict.  The standard of review for the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence.  *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008).  Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other.  *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005).  In determining whether there is substantial evidence, this court "views the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered."  *ConAgra Foods, Inc.*, *supra*.

As a preliminary matter, the Smiths contend that the Bentons failed to preserve either of their points on cross-appeal.  It is undisputed that at the close of the evidence in the Smiths' case-in-chief, the Bentons made motions for directed verdict based on both points challenged on appeal.  Those motions were denied.  At the close of all of the evidence in the case, the Bentons simply renewed "all motions that we made at the close of [the Smiths'] case."  The Smiths contend that the Bentons' failure to reiterate the grounds on which their motions for directed verdict were made precludes this court from reaching the merits of this issue.  We disagree.  Our supreme court has held that the renewal of motions for directed verdict was entirely sufficient to preserve the issue on appeal.  *Aronson v. Harriman*, 321 Ark. 359, 901 S.W.2d 832 (1995).

We first consider whether the circuit court erred by allowing the jury to consider whether the former shareholders of MPT could be liable to the Smiths for damages. Arkansas Code Annotated section 4–27–1407(d)(2)(Supp. 2015) pertains to enforcement of unknown claims against shareholders and is the statute by which the Smiths successfully sought to have personal liability imposed on the former shareholders of MPT. It applies only when "the assets [of the corporation] have been distributed in liquidation." Ark. Code Ann. § 4-27-1407(d)(2). When liquidation occurs, enforcement of claims against an individual shareholder is permitted "to the extent of . . . the corporate assets distributed to him in liquidation." *Id.*

The Bentons argue that judgment against them as individuals cannot stand because there was not substantial evidence that the assets of MPT were distributed in liquidation. The outcome of this issue depends on the meaning of the settlement agreement entered into by the former shareholders of MPT, which divided all of MPT's property and debt between the individual shareholders. Additionally, Russell Benton testified that the settlement agreement was a division of MPT's assets and resulted in a transfer of those assets to MPT's shareholders. He stated that MPT had assets of over $2 million, that Danny Snowden was a 50 percent shareholder, and that Russell and his brother Joe were 25 percent shareholders. While not specifically termed liquidation in the settlement agreement, we conclude that there was substantial evidence that the settlement agreement liquidated MPT's assets and distributed them to its individual shareholders and/or their assignees.

Now, we turn our attention to the second argument presented by the Bentons. They also contend that the Smiths failed to present substantial evidence of their damages and that the circuit court improperly denied their motions for directed verdict on this issue.

The Smiths were required to present some evidence of the value of the mineral rights at the time of conveyance. *Lane, supra.* The evidence reflects that the mineral rights were worth $1 per acre at the time of the conveyance. According to the testimony of Russell Benton, MPT sold CenArk the mineral rights for $1 per acre in 1985. In reviewing the evidence in the light most favorable to the Smiths, we conclude that the circuit court did not err in denying the Bentons' motion for directed verdict on the issue of damages.

Accordingly, we affirm on the Bentons' cross–appeal.

### B. *The Estate of Snowden's Cross-Appeal*

The Estate of Snowden argues that the circuit court erred in ruling that the statute of limitations did not bar the Smiths' claim. We summarily dispose of this argument. The Estate of Snowden failed to raise the statute–of–limitations issue before the circuit court. While both MPT and the Bentons filed motions to dismiss on the grounds that the statute of limitations barred this action, the Estate of Snowden did not seek a ruling from the circuit court regarding whether the statute of limitations barred the Smiths' claim. Because the Snowden Estate did not obtain a ruling on this issue, this court is precluded from considering it on appeal. *Garcia v. Estate of Duvall*, 375 Ark. 520, 293 S.W.3d 389 (2009). Additionally, the Estate of Snowden's cross-appeal can be disposed of for an alternative reason. The Estate argues to this court that the statute of limitations began to run at the time of conveyance because the land was "wild and unimproved." *Seldon v. Dudley E. Jones Co.*, 74 Ark. 348,

85 S.W. 778 (1905) (holding that "where the land is wild and unimproved, actual eviction is not necessary"). However, whether the land was wild and unimproved was not addressed by the circuit court. We are precluded from considering this argument on appeal. *Garcia, supra.*

Affirmed.

ABRAMSON and VAUGHT, JJ., agree.

*Bowen Law Firm, PLLC*, by: *Martin W. Bowen*; and *Gregory D. Taylor, P.A.*, by: *Gregory D. Taylor*, for appellants.

*Morgan Law Firm, P.A.*, by: *M. Edward Morgan*, for appellee Sheila Snowden, in her capacity as personal representative of the Estate of Danny H. Snowden, Deceased.