Cite as 2024 Ark. App. 128

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-22-140

| | |
|---|---|
| CLARENCE E. TURNBO, INDIVIDUALLY AND AS TRUSTEE OF BEAU TURNBO TRUST NUMBER ONE | Opinion Delivered February 21, 2024 |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION |
| APPELLANT | [NO. 60CV-20-3293] |
| V. | HONORABLE WENDELL GRIFFEN, JUDGE |
| OSCAR HAMLETT, JR. | AFFIRMED |
| APPELLEE | |

**WENDY SCHOLTENS WOOD, Judge**

Clarence E. Turnbo, individually and as trustee of Beau Turnbo Trust Number One ("Turnbo"), appeals an order entered by the Pulaski County Circuit Court granting summary judgment in favor of Oscar Hamlett, Jr., in this land-sale contract case. On appeal, Turnbo contends that the circuit court erred by (1) rejecting Turnbo's statute-of-limitations defenses to Hamlett's counterclaim for unlawful detainer and breach of contract; (2) granting Hamlett's motion for summary judgment and denying Turnbo's motion for summary judgment; (3) adjudicating the unlawful-detainer counterclaim before Turnbo's complaint for declaratory judgment; and (4) denying Turnbo's motion for stay of the writ of possession. We affirm.

I. *Relevant Background*

On August 28, 2013, Turnbo and Hamlett entered into a written contract wherein Turnbo agreed to buy and Hamlett agreed to sell a commercial property in North Little Rock for $394,959.60. The purchase price was to be paid within fifteen years in 180 monthly payments of $2,500, with $305.78 of each amount to be applied to the property taxes. Upon full payment of the $394,959.60 purchase price, Turnbo would receive a warranty deed conveying the fee-simple title to the property.

Under the terms of the 2013 contract, Turnbo was obligated to furnish and maintain insurance on the property and name Hamlett as the beneficiary of the insurance policy. The contract also provided that until the purchase price was paid in full, the payments thereunder and any improvements made to the premises would be regarded as rent. It further included a forfeiture clause that provided that time was of the essence and that Hamlett could take possession and remove Turnbo from the premises for the nonpayment of such sums or for any breach of the contract with the same force and effect as the nonpayment of rent in the usual landlord-tenant relationship. The forfeiture clause also provided that, in the event of any breach, Hamlett would be deemed relieved and discharged of any claim or obligation of any kind under the contract, and all payments and improvements would be deemed rent for the use and occupancy of the premises. The contract also provided that a waiver by Hamlett of any breach by Turnbo would not bar Hamlett from pursuing subsequent breaches by Turnbo, and it contained a "no-unwritten-modification clause" that provided that the terms

and conditions of the contract could be amended or modified only by a written instrument signed by the parties. Finally, Turnbo promised to personally guarantee the contract.

On May 18, 2020, Hamlett gave Turnbo notice of his intent to enforce the forfeiture clause and terminate the contract because Turnbo failed, after multiple requests, to cure the following defaults: (1) failure to insure the property; (2) nonpayment of twelve payments; (3) failure to pay the property taxes; and (4) breach of the personal guarantee. The notice informed Turnbo that he had ten days to have his personal property removed from the premises. Turnbo did not remove his personal property.

On June 5, Turnbo filed a complaint for declaratory judgment that Hamlett waived any default by Turnbo and was barred from enforcing the forfeiture clause. Three days later, Turnbo was served with a notice to quit, demanding that he surrender possession of the property to Hamlett within three days. Turnbo did not surrender possession.

On June 18, Hamlett filed an answer and counterclaim for unlawful detainer and breach of contract, seeking immediate possession of the property and damages under the unlawful-detainer statute, Arkansas Code Annotated section 18-61-104 (Repl. 2015). Relevant to this appeal, Hamlett alleged that Turnbo was in default for failure to obtain insurance on the property, failure to pay increased property taxes in 2017 and 2019, and nonpayment of rent between March and August 2014 in the amount of $15,000. Hamlett also alleged that because Turnbo had been convicted and sentenced to prison earlier that year for raping a thirteen-year-old girl on the subject property, he could not satisfy his obligation to personally guarantee the contract.

3

On June 22, a notice of intention to issue writ of possession was filed, advising Turnbo that he had five days to file an objection to Hamlett's unlawful-detainer action. The notice also stated that if Turnbo continued to possess the property, he would be required to deposit into the court's registry a sum equal to the amount of rent due on the property and to continue paying rent into the court's registry during the pendency of the proceedings in accordance with the terms of the contract. The notice warned that "failure to tender the rent due without justification is grounds for the court to grant the writ of possession."[1]

On June 26, Turnbo filed an objection and a motion to dismiss Hamlett's counterclaim, alleging that Hamlett's unlawful-detainer claim was barred by the three-year "peaceable and uninterrupted" possession defense set forth in Arkansas Code Annotated section 18-61-104 (Repl. 2015). He also alleged that Hamlett's breach-of-contract claim for nonpayment of rent in 2014 was barred by the five-year statute of limitations applicable to written contracts set forth in Arkansas Code Annotated section 16-56-111 (Repl. 2005). Following a hearing, the circuit court denied Turnbo's motion to dismiss.

On November 5, the circuit court held a hearing on Hamlett's unlawful-detainer claim. Hamlett testified that Turnbo had not paid approximately $15,000 in rent. Several checks totaling $15,000, signed by Turnbo and given to Hamlett between March and August

---

[1]Turnbo did not tender the outstanding rent balance of $15,000 that Hamlett alleged was due for March through August 2014. Beginning in September 2020, Turnbo did, however, deposit into the court's registry one payment of $7,500 and three payments of $2,500 (totaling $15,000) to represent the rent due from July 2020 through December 2020.

4

2014, were introduced. It was undisputed that when Turnbo tendered the checks to Hamlett, he (Turnbo) did not have the funds to cover them. Hamlett testified that because of Turnbo's financial difficulty, he held the checks on Turnbo's promise to make the checks good as soon as business picked up. According to Hamlett, Turnbo never made the checks good or paid the unpaid rent, despite Hamlett's having talked to Turnbo about the outstanding payments both himself, and through his attorney.

Hamlett also testified that he spoke to Turnbo multiple times about Turnbo's obligation to furnish and maintain insurance on the property, but Turnbo still had failed to do so. An October 16, 2013 letter from Hamlett's former attorney, Herman Eubanks, to Turnbo was admitted into evidence. According to Hamlett, this letter was sent as a reminder to Turnbo of his unfulfilled obligation to insure the property. Hamlett further testified that he had paid an increase in property taxes in 2017 and 2019 that Turnbo was contractually obligated to pay but had failed to pay.

Turnbo testified and admitted that he had gotten behind on his payment obligations under the contract but claimed that he had eventually caught up, paid the outstanding balance, and paid the property taxes. He confirmed, however, that he had no documentation showing that he made any payments to Hamlett between March and August 2014 other than one partial payment in the amount of $250.

Turnbo's ex-wife, Cynthia, testified that she was given power of attorney for Turnbo when he went to prison for his rape conviction, and she took over Turnbo's bookkeeping in

5

February 2020. She stated that, at that time, Turnbo was behind on payments to Hamlett. She claimed to have eventually paid the outstanding payments on Turnbo's behalf.

On December 14, 2020, the circuit court entered an order concluding that Hamlett was entitled to possession of the property on the basis of these findings: (1) Turnbo owed past-due rental payments in the amount of $15,000; (2) the contract required Turnbo to purchase insurance for the property, and he failed to do so; (3) Hamlett presented evidence sufficient to make a prima facie case of entitlement to possession of the property as required by Arkansas Code Annotated section 18-60-307(d)(1)(A) (Repl. 2021); and (4) based on all the evidence, Hamlett was likely to succeed on the merits at a full hearing.

That same day, Turnbo moved for stay of the writ of possession and to provide security pursuant to section 18-60-307(e), proposing to deposit into the court's registry a $15,000 cash bond to represent future rent payments that would become due from January 2021 through June 2021. The circuit court denied Turnbo's motion and entered an order directing the clerk to release to Hamlett the $15,000 Turnbo had previously deposited into the court's registry.

On March 24, Turnbo moved for summary judgment on his complaint for declaratory judgment, arguing that enforcement of the forfeiture clause was barred. He alleged that Hamlett waived forfeiture (1) by accepting late and partial payments in the past without declaring a default; (2) by his "silence" regarding Turnbo's failure to insure the property for many years; and (3) by his delay in declaring defaults on the property-tax and personal-guarantee obligations. He also reasserted his statute-of-limitations defense to

6

Hamlett's breach-of-contract claim for nonpayment in 2014. On August 5, Hamlett filed a motion for partial summary judgment on his counterclaim for breach of contract.

On September 3, the circuit court held a hearing on the parties' cross-motions for summary judgment where the parties presented their respective arguments. On November 8, the court entered an order denying Turnbo's motion for summary judgment and granting Hamlett's motion for partial summary judgment. In its order, the court found that the parties' agreement was an executory contract, which—by its explicit terms—gave Hamlett the right to declare a forfeiture in the event of a default. It also expressly provided that a waiver by Hamlett of any breach of any provision of the contract would not bar Hamlett from declaring any subsequent breach, and it provided that the terms and conditions of the agreement could be amended or modified only by a written instrument signed by the parties. The court further found that no genuine issue of material fact existed in the case; the facts were undisputed that Turnbo failed to pay rent, failed to insure the property, and failed to honor the personal guarantee, as required by the contract. The court noted that Turnbo had been notified of these deficiencies through several demands—both orally and in writing—but failed to cure them. Accordingly, the court authorized the clerk to issue a writ of possession to the sheriff to take possession of the property from Turnbo and any other occupants and deliver possession of the property to Hamlett. The writ was issued on November 10, 2021. This appeal followed.

## II. *Discussion*

### A. Statute-of-Limitations Defenses

7

## 1. *Breach of contract*

Turnbo argues that the circuit court erred in denying his motion to dismiss Hamlett's counterclaim for breach of contract on statute-of-limitations grounds. He argues that Hamlett's breach-of-contract claims for both failure to make rent payments due in March through August 2014 and failure to insure the property were barred under section 16-56-111(a)'s five-year limitations period.

The period of limitations for contracts runs from the point at which the cause of action accrues. *Pennington v. BHP Billiton Petroleum (Fayetteville), LLC*, 2021 Ark. 179, at 3, 631 S.W.3d 555, 557. A cause of action accrues the moment the right to commence an action comes into existence and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached. *Shellito v. Hurley*, 2023 Ark. App. 414, at 5, 676 S.W.3d 25, 28. Here, the parties' agreement provided that Turnbo would pay the purchase price in monthly installments of $2,500, beginning September 1, 2013, and continuing for 180 months. When, as in this case, "the debt is to be paid in installments, the statute of limitations runs against each installment from the time it becomes due." *NP191, LLC v. Branch*, 2023 Ark. App. 156, at 7, 662 S.W.3d 713, 717. Hamlett's claim for failure to make payments from March through August 2014 therefore expired, at the latest, in August 2019. Hamlett did not file the claim until June 2020. Accordingly, we agree that this claim is time-barred. We affirm, nevertheless, because the nonpayment of rent in 2014 was not the only breach that Hamlett alleged in his counterclaim for breach of contract.

Hamlett also alleged that Turnbo was in breach for, among other defaults, failure to furnish and maintain insurance on the property. Turnbo argues that because he admittedly never obtained insurance, this breach occurred when he agreed to, but did not, insure the property in 2013, nearly seven years before Hamlett filed his claim. Turnbo did not make this argument in the circuit court; therefore, it is not preserved for review on appeal. *Smith v. Mountain Pine Timber, Inc.*, 2016 Ark. App. 193, at 9, 487 S.W.3d 409, 414–15 (failure to obtain a ruling on an issue precludes the court from considering it on appeal). Even so, it is undisputed that Turnbo did not insure the property after Hamlett had given notice of his intent to enforce the forfeiture clause and terminate the contract on the basis of Turnbo's failure to insure the property in May 2020. Because Hamlett filed his counterclaim for breach of contract on June 18, 2020—one month later—the claim was well within the five-year limitations period.

## 2. *Unlawful detainer*

Turnbo claims that the circuit court erred in denying his motion to dismiss Hamlett's counterclaim for unlawful detainer on statute-of-limitations grounds. Turnbo contends that Hamlett's cause is barred because Turnbo had been in "peaceable and uninterrupted" possession of the property since 2001. Section 18-61-104 provides that "[t]hree (3) years' peaceable and uninterrupted possession of the premises immediately preceding the filing of a complaint for . . . unlawful detainer may be pleaded by any defendant in bar of the plaintiff's demand for possession." Ark. Code Ann. § 18-61-104.

9

Generally, a statute of limitations begins running when the plaintiff has a complete and present cause of action. *Riddle v. Udouj*, 99 Ark. App. 10, 13, 256 S.W.3d 556, 558 (2007). The plaintiff in an unlawful-detainer action does not have a complete, present cause of action until the plaintiff demands possession of the property, Ark. Code Ann. § 18-60-304(2) (Repl. 2015), meaning that the statute of limitations on the claim does not begin to run until demand for possession is made. *Norman v. Randle*, 95 Ark. App. 292, 295, 236 S.W.3d 532, 534 (2006) (rejecting the three-year-possession defense and noting that the statute of limitations on an unlawful-detainer claim does not begin to run until a demand for property is made). Here, Hamlett made a demand for possession of the property on June 8, 2020, which triggered the section 18-61-104 limitations period. That same month, Hamlett filed his counterclaim for unlawful detainer. Turnbo's period of "peaceable and uninterrupted possession" was less than one month—not three years as required by the statute. Therefore, Hamlett's claim for unlawful detainer was timely filed, and the circuit court did not err in denying Turnbo's motion to dismiss on that basis.[2]

---

[2]Alternatively, Turnbo contends that Hamlett's demand for possession did not trigger the limitations period because there was no landlord-tenant relationship and that Hamlett failed to prove that he "was the owner [of the property] by forfeiture, not a seller or mortgagee under contract, and that Turnbo had no right (as owner or mortgagor) to the property." As will be discussed in subsection B, Turnbo's argument has no merit. The parties' agreement in this case was an executory contract with a forfeiture clause. Until the purchase price was paid in full, the contract expressly treated the parties as landlord and tenant and authorized Hamlett to remove Turnbo from the property "for any breach of the agreement with the same force and affect as for the non-payment of rent as in the usual landlord/tenant relationship." *See, e.g.*, *White v. Page*, 216 Ark. 632, 226 S.W.2d 973 (1950). In light of the parties' landlord-tenant relationship, the limitations period in section 18-61-104 applied and was triggered upon Hamlett's demand for possession.

## B. Cross-Motions for Summary Judgment

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *NP191, LLC*, 2023 Ark. App. 156, at 5, 662 S.W.3d at 716. When, like here, the parties file cross-motions for summary judgment, "they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case." *Ocwen Loan Servicing, LLC v. Oden*, 2020 Ark. App. 384, at 8, 609 S.W.3d 410, 415 (citation omitted). In deciding issues of law, our standard of review is de novo, meaning the entire case is open for review. *NP191, LLC*, 2023 Ark. App. 156, at 5, 662 S.W.3d at 716.

Turnbo claims that the circuit court erred by granting partial summary judgment in favor of Hamlett and denying Turnbo's motion for summary judgment. He first argues that Hamlett waived the right to enforce the forfeiture clause by not requiring strict compliance with the terms of the contract and that equity abhors a forfeiture.

As the circuit court found, the parties' agreement here is an executory contract with a forfeiture clause—not unlike those that have been upheld by both this court and our supreme court. *See Wonder v. McLeese*, 2010 Ark. App. 192, at 3; *see also White v. Page*, 216 Ark. 632, 637, 226 S.W.2d 973, 975 (1950) ("purchaser's rights under an executory contract affecting real estate may be forfeited pursuant to the contract and without proceedings in law or equity"). In negotiating the contract, the parties expressly agreed that, until the

11

purchase price for the property was paid in full, the payments made under the contract and any improvements made to the premises "shall be regarded as rent." They also expressly agreed that, in the event of a default, Hamlett was "hereby empowered and authorized to take possession and remove [Turnbo] from the premises for the non-payment of [rent] or for any breach of the agreement with the same force and affect as for the non-payment of rent as in the usual landlord/tenant relationship." As the circuit court also found, it was undisputed that Turnbo defaulted on his contractual obligation to insure the property. Turnbo admitted as much at the unlawful-detainer hearing.

The supreme court's decision in *Minor v. Chase Auto Finance Corp.*, 2010 Ark. 246, 372 S.W.3d 762, is also instructive. *Minor* presented the first-impression issue of whether an anti-waiver provision in a contract itself can be waived by acceptance of late payments on the contract. The court noted a three-way jurisdictional split on the issue, with one line of cases holding that an anti-waiver provision in a contract, at least when coupled with a provision requiring amendment or modification of the agreement in writing, cannot itself be waived. This is the line of cases our supreme court adopted as the rule in Arkansas. Thus, under Arkansas contract law, an anti-waiver provision in an agreement, at least when it is coupled with a provision that the agreement cannot be modified except by written instrument, cannot itself be waived. *Id.* at 12–13, 372 S.W.3d at 768.

Here, as the circuit court found, when the parties negotiated their agreement, they expressly agreed that a "waiver by the Seller of any breach of any of the provisions of this agreement required to be performed by the Purchaser shall not bar the rights of the Seller to

12

avail itself of any subsequent breach of any such provision." The parties further agreed that their "agreement constitutes all the terms and conditions agreed upon by the parties hereto with regard to the transaction contemplated hereby and shall not be amended or modified except by a written instrument signed by the parties hereto."

"When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed." *Mattox v. Main Entrance, Inc.*, 2021 Ark. App. 382, at 15. "We must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning." *Id.* "[T]he intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement." *Id.* Here, the parties' agreement included an anti-waiver provision coupled with a provision that any subsequent modification to the terms must be in writing. Therefore, the circuit court did not err by concluding that, under Arkansas law, Hamlett could not waive remedies available to him for a future breach of the agreement.

Turnbo's reliance on *Humke v. Taylor*, 282 Ark. 94, 666 S.W.2d 394 (1984), is misplaced. In *Humke*, the supreme court was presented with the issue of whether the circuit court erred in refusing to transfer the unlawful-detainer case to equity, a legal issue that has not existed since the merger of law and equity via amendment 80 to the Arkansas Constitution in 2001. The supreme court held that the circuit court erred in refusing to transfer the case to chancery because the appellant presented evidence—equitable in nature— that the chancery court could have considered in avoiding the forfeiture. *Humke*, 282 Ark.

at 98, 666 S.W.2d at 396. While the contract at issue in *Humke* included a forfeiture clause, it did not include an anti-waiver clause or a no-unwritten-modification clause. Therefore, *Humke* provides no support for Turnbo's argument that Hamlett waived his right to forfeiture under the contract.

Turnbo also argues that, despite the parties' negotiated agreement, his substantial performance worked to relieve him of his contractual obligations under the agreement. We reject this argument. Again, the terms of the contract are expressly stated: there is no provision for substantial performance. To the contrary, the contract contains a forfeiture clause, a no-waiver clause, and a no-unwritten-modification clause. In any event, even if substantial performance applied, Turnbo did not substantially perform. There was evidence that, among other things, Turnbo still owed approximately $220,000 on the $394,959.60 purchase price, he admittedly never insured the property, and he failed to pay increased property tax on the property.

## C. Bifurcation of the Claims

Turnbo claims that the circuit court's decision to "bifurcate" the proceedings and prioritize Hamlett's unlawful-detainer claim over his declaratory-judgment claims resulted in a denial of due process. We do not reach the merits of this argument because it is not preserved for review. An appellant waives an argument on appeal by failing to object at the first opportunity. *Jackson v. Crump*, 2022 Ark. App. 136, at 11, 643 S.W.3d 788, 794.

Turnbo made no argument or objection regarding the circuit court's "bifurcation" of the parties' claims either before or during the November 5, 2020 hearing on the unlawful-

14

detainer claim. If anything, Turnbo acquiesced to the circuit court's decision on how to proceed. At the beginning of the hearing, the circuit court announced, "So, today, I think we'll start, Ms. Brown, with you, with your testimony from your witnesses and then go to the Defendant. I know we've got Counterclaims, but just to try to keep it straight[.]" Ms. Brown, who was Turnbo's attorney, interjected, "It was my understanding we're here on the Counterclaim for an immediate Writ of Possession[,]" and not the whole suit. The court stated, "So we'll go forward today on the . . . unlawful detainer claim, as Ms. Brown mentioned." Turnbo cannot now argue that the circuit court erred by doing the very thing he essentially urged it to do. "A party cannot complain of action he has induced, consented to, or acquiesced in." *Dew v. Dew*, 2012 Ark. App. 122, at 11, 390 S.W.3d 764, 771.

Later in the hearing, during her cross-examination of Hamlett, Turnbo's attorney attempted to raise the issue of waiver of forfeiture. The circuit court sustained an objection by Hamlett, explaining, "I think we're sort of going afield of where we are because we're basically moving on the unlawful detainer portion. I thought that's what was understood today . . . rather than go into the whole contract dispute." Turnbo's attorney responded, stating that Turnbo's defense to enforcement of the forfeiture was that Hamlett had waived the alleged breaches due to his accepting payments for years and not suing until 2020. The circuit court explained again that "the lawsuit is more than the unlawful detainer portion," noting that "discovery hasn't been done and there were other issues." The court then instructed the parties to stick to the issue of whether the defaults Hamlett "has alleged are enough to sustain an unlawful detainer" such that Hamlett is entitled to immediate

15

possession of the property. Turnbo's attorney responded, "Okay," and made no additional argument or objection to the circuit court's proceeding on the limited issue of unlawful detainer.

The first time Turnbo asserted a due-process argument on the grounds that the circuit court's prioritizing the unlawful-detainer claim over his declaratory-judgment action was in his amended motion for stay of the writ of possession filed on January 24, 2021—over two months after the November 5 unlawful-detainer hearing and over one month after the circuit court had entered its December 14 order on the unlawful-detainer claim. That was too late. *See Black, Inc. v. Dunklin*, 2018 Ark. App. 3, at 8–9, 540 S.W.3d 696, 703 (holding that appellants' arguments were not preserved for appeal because an objection was not made at the first opportunity, and the circuit court was given no opportunity to rule on that issue). Moreover, Turnbo did not obtain a ruling on his belated due-process argument. It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. *Chacon v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 277, at 8, 600 S.W.3d 131, 135. For these reasons, Turnbo's bifurcation argument is not preserved.

D. Motion for Stay of Writ of Possession

Turnbo argues that the circuit court erred by denying his request for a stay of the writ of possession and to provide security pursuant to Ark. Code Ann. § 18-60-307(e). In response, Hamlett contends that the issue is moot. We agree with Hamlett. Appellate courts will not review issues that are moot. *Blakely v. Ark. Children's Hosp.*, 2022 Ark. App. 116, at 6. An issue is moot if any judgment or opinion issued by this Court would have no practical

16

effect upon a then existing legal controversy. *Id.* A case becomes moot if a controversy ceases to exist between the parties at any stage in the legal proceedings, including the appeal. *Gillespie v. Brewer*, 2019 Ark. App. 275, at 8, 577 S.W.3d 59, 65.

Section 18-60-307(e) provides a mechanism for a tenant in an unlawful-detainer action to retain possession of the property after the court has determined that the landlord is likely to prevail on the merits at a full hearing, but before the court's final adjudication of the parties' claims. Here, the circuit court found that Hamlett was likely to succeed on the merits at a full hearing and, in its December 14, 2020 order, instructed the clerk to issue a writ of possession. Despite the circuit court's order, no writ of possession was issued, and possession was not immediately returned to Hamlett. Nevertheless, on December 14, Turnbo filed a motion for stay, which the circuit court denied. Over the ensuing months, the parties engaged in discovery and ultimately filed competing motions for summary judgment. The writ of possession was not issued until November 10, 2021, after the circuit court had entered its November 8 order granting summary judgment in favor of Hamlett and against Turnbo, thereby fully and finally adjudicating the case.

In short, Turnbo was allowed to remain in possession of the property during the entire pendency of the action in the circuit court without posting security for his continued possession. The circuit court's denial of Turnbo's request for a stay did not affect his possession of the property. A reversal of the circuit court's order, therefore, would have no practical effect.

Affirmed.

HARRISON, C.J., and MURPHY, J., agree.

*McMullan & Brown*, by: *Amy Clemmons Brown*, for appellant.

*Gill Ragon Owen, P.A.*, by: *Jason A. Lee* and *Mitchell S. Dennis*, for appellee.